# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Mohamed Salah Hussein,<br><br>Defendant. | Crim. No. 20-75 (ADM/BRT)<br><br><br><br>**REPORT AND<br>RECOMMENDATION** |

David P. Steinkamp, Esq., and Justin A. Wesley, Esq., Assistant United States Attorneys, counsel for Plaintiff.

Kevin W. DeVore, Esq., DeVore Law Office, P.A., counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendant Mohamed Salah Hussein's Amended Motion to Suppress Evidence Obtained as a Result of Search and Seizure-Multiple Warrants." (Doc. No. 40.) A hearing was held on July 23, 2020, and the parties submitted supplemental briefing to the Court. (Doc. Nos. 44, 46, 48, 50.) For the reasons that follow, this Court recommends that Defendant's motion be denied.

## BACKGROUND

On November 2, 2019, Scott County Judge Ann M. Offerman issued a warrant for the search of a residence in Savage, Minnesota. (*See* Doc. No. 51, Hr'g Ex. 1 at 2.) Officers executed that search warrant that same day at approximately 1:13 p.m., and recovered "a 1st degree amount of suspected OxyContin inside the residence." (*Id.*)

While officers were searching that residence, a black Toyota Camry arrived, and the passenger entered the residence. (*Id.*) The driver of the vehicle—Defendant—remained seated in the car, but "[f]or officer safety considerations and continuation of the investigation [he] was contacted and asked to come into the residence" because he had arrived during the execution of the search warrant. (*Id.*)

The officer who applied for the search warrant at issue here, Alex Johannes, stated that he knew "through his training and experience that often times after a large amount of narcotics are received they are often quickly sold." (*Id.*) Accordingly, due to "the large amount of suspected drugs located at the residence" and the arrival of Defendant and his passenger, an Airport Police Department detective and his K9 partner, Jackson, who were already on scene, conducted a dog sniff of the Toyota Camry. (*Id.* at 3.) The warrant states that the detective and Jackson are a certified team for both the United States Police Canine Association and the National Police Canine Association, and that Jackson is certified to detect the odors of methamphetamine, ecstasy, cocaine, crack cocaine, marijuana, opium, and heroin. (*Id.*) They have worked together since October 31, 2017. (*Id.*) Jackson alerted to the presence of a narcotic odor on the car. (*Id.*) Officers requested Defendant's consent to search the Toyota Camry, but he declined. (*Id.*)

Officers then had the Toyota Camry secured and towed to the Savage Police Department pending issuance of a search warrant for the vehicle. Officer Johannes and another Savage Police Department Officer followed the Toyota Camry from the residence to the Savage Police Department where it was secured in the evidence bay. (*Id.*)

The vehicle made no additional stops and no other persons had contact with the vehicle. (*Id.*)

Officer Johannes applied for a search warrant for the Toyota Camry on November 2, 2019, at 4:13 p.m. (*Id.* at 1–5.) That application was granted and a warrant issued by Scott County Judge Rex Stacey shortly thereafter. (*Id.* at 8.) The search warrant was executed on the Toyota Camry on November 4, 2019. (*Id.* at 9.) A loaded handgun, ammunition, and a wallet with various documents inside it were recovered from the vehicle. (*Id.* at 10.) Defendant asserts in his brief that "[a]s a result of searching Defendant's vehicle, law enforcement seized controlled substances." (Doc. No. 46, Mem. in Supp. 12.) There is, however, no record of such a seizure in the return. (*See* Hr'g Ex. 1 at 10–11.)

## DISCUSSION

Defendant filed a "Motion to Suppress Evidence Obtained as a Result of Search and Seizure – Multiple Warrants" on June 8, 2020. (Doc. No. 31.) A motion hearing was scheduled to take place by video on July 1, 2020. (Doc. No. 24 at 2.) As was his right, Defendant declined to consent to a video hearing, and an in-person motions hearing was scheduled for July 23, 2020. (Doc. No. 39.) Defendant subsequently filed an Amended Motion to Suppress, seeking an order suppressing any electronic, written, or physical data, information, or evidence obtained as a result of two tracking and search warrants issued by the District Court of Scott County on November 2, 2019. (Doc. No. 40.) The Government filed its opposition to Defendant's motion, and requested that the Court clarify the nature of Defendant's motion. (Doc. No. 42 at 2.) The Court issued an Order

in advance of the hearing requiring the parties to meet and confer to confirm that the Defendant sought a four-corners review of the probable cause set forth in the affidavit. (Doc. No. 43.)

Subsequently, Defendant's counsel informed the Court in an e-mail dated July 21, 2020, that he had spoken to opposing counsel, that Defendant sought only to challenge probable cause on the search warrant based on a four-corners review, and that no witness testimony was needed regarding the motion. (Doc. No. 52, E-mail ("I spoke to Mr. Steinkamp and we have agreed that we . . . simply submit the issue of probable cause on the search warrant based on a four-corners review. We will not need witnesses to testify.").) Defendant reiterated this position at the motion hearing held on July 23, 2020. Following that hearing, the Court set forth Defendant's clarified position in an Order dated July 24, 2020; Defendant's argument was that the:

> **Search Warrant for Black Colored 2012 Toyota Camry** MN LIC: DJM183; VIN: 4T1BF1FK6CU624481 (Bates No. 00003850–00003852) issued by a Judge of District Court of Scott County on November 2, 2019, was issued without a sufficient showing of probable cause in the supporting application (Bates Nos. 00003845–00003849).

(Doc. No. 45, 7/24/20 Ord. 4–5; *see* Hr'g Ex. 1.) Following the hearing, the Court requested further briefing on whether the search warrant for the Black Colored 2012 Toyota Camry was supported by probable cause. The Defendant submitted a Memorandum in Support, and the Government submitted its Response. (Doc. Nos. 46, 49.)

## A. Probable Cause for the Search Warrant for the Black Colored 2012 Toyota Camry

The Fourth Amendment requires law enforcement to show probable cause before a search warrant is authorized. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). When determining whether probable cause exists, a detached and neutral judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (quotations omitted)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

Defendant claims that the search warrant at issue is defective for two reasons. (Mem. in Supp. 4.) Defendant's first argument, however, implicates issues beyond the pending motion.[1] Specifically, he asserts that officers violated his rights by detaining him

---

[1] Defendant's first argument is set forth below:

> [The search warrant] is based on an unconstitutional search. After D.G.K. walked through the door of the home, law enforcement seized Defendant by ordering him inside the home for "officer safety." Nothing in the search

5

during their search of the residence in Savage, Minnesota, and also by executing a dog sniff of Defendant's Toyota Camry. (*Id.* at 4–5.) As set forth above, however, Defendant's present motion is limited to a probable cause challenge to the Search Warrant for the Black Colored 2012 Toyota Camry. Accordingly, "only the information

---

> warrant suggests Defendant had any connection to the home or that law enforcement had any reason to believe Defendant was involved in the distribution of controlled substances. Rather, the person most likely to be a suspect was D.G.K. because he was the one who walked through the front door of the home where the search was being conducted. Defendant was an innocent chauffeur. But even if law enforcement suspected Defendant to be a suspect, that is not in the search warrant. The only reason for removing Defendant from his vehicle was officer safety. Yet, law enforcement then searched his . . . vehicle by walking a K9 officer around it.
>
> A dog sniff is a search within the meaning of the Fourth Amendment. *Florida v. Jardines*, — U.S. —, 133 S.Ct. 1409, 1416, 185 L.Ed.2d 495 (2013). Allowing a K9 officer to investigate the contents of Defendant's vehicle constituted a search. Defendant's vehicle had not been stopped on the road where perhaps he would have a lower expectation of privacy. Nor had any concerns for officer safety persisted since Defendant had been entirely removed from the vehicle. Once Defendant was removed from his vehicle, any reason to look in the vehicle - for officer safety - dissipated. In any event, a K9 officer could not guarantee officer safety because it could not detect weapons with a sniff. Rather, the *only* reason for walking the K9 officer around the vehicle would be to detect controlled substances. Absent from the search warrant is why Defendant was a suspect other than the nebulous assertion large quantities of drugs are often quickly sold. But this anecdotal belief does not render Defendant a distribution suspect. At least, if it did, it is not explained in the search warrant. Defendant is not the person who walked into an active search. Defendant was not ordered out of his vehicle because he was a suspect. Put another way, there was no probable cause to search Defendant's vehicle for controlled substances if the reason for his detention was officer safety. That search was an impermissible expansion of the seizure of Defendant and was unrelated to the reason for the seizure.

(Mem. in Supp. 4–5.)

which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Manning*, 361 F. Supp. 3d 839, 833 (D. Minn. Jan. 2, 2019) (quoting *United State v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). As the Government notes, had these other suppression issues been raised, the Government would have been permitted to call witnesses and submit other evidence at the July 23, 2020 motions hearing. If Defendant now intends to pursue a motion regarding his detention during the search or the dog sniff of the Toyota Camry, he must file a proper motion pursuant to the Local Rules prior to the expiration period of this Report and Recommendation so that the Court may consider whether a new or reopened motions hearing, and briefing on such motions, is warranted.

The Court thus turns to Defendant's second argument, which appears directly relevant to his motion for a four-corners review of the search warrant at issue. Defendant argues that the search warrant is defective because it was "vague" and "arose out of fortuitous circumstances." (Mem. in Supp. 5.) Defendant argues that his presence at the residence being searched in Savage, MN, and the fact that he was "chauffeuring" a suspect in that investigation are inadequate to explain why Defendant then became a target of the officers' investigation. (*Id.*) Defendant argues that there is "no discussion, for example, of law enforcement having observed Defendant at the [Savage, Minnesota] home before," nor is there "discussion of knowing Defendant to have distributed controlled substances in the past." (*Id.* at 5.) Defendant argues that not only is "[t]here no

7

discussion about Defendant," but that "[i]t is not clear law enforcement knew who Defendant was before they ordered him out of his vehicle."[2] (*Id.*)

This Court must give "great deference" to the probable-cause determination made by Judge Stacey. *See United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010). Judge Stacey's determination of probable cause must be upheld "as long as he had a 'substantial basis' for concluding that the 'search would uncover evidence of wrongdoing.'" *Manning*, 361 F. Supp. 3d 839, 844 (quoting *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999)). "An affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010) (cleaned up). "Determining whether probable cause exists at the time of the search is a 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (citation omitted).

Here, the affidavit provided strong evidence that there was a fair probability that contraband or evidence of criminal activity would be found in the Black Colored 2012 Toyota Camry. The affiant, Agent Alex Johannes, described his background and role as a Drug Task Force Agent assigned to investigate the illegal possession, manufacture, and

---

[2] Here, Defendant once again inserts an argument concerning the dog sniff that is outside the scope of the pending motion. (Mem. in Supp. 5 ("Without the dog sniff, there is nothing in the search warrant that rises to the level of probable cause to invade Defendant's vehicle.").) As discussed herein, this argument will not be addressed in this Report and Recommendation.

8

distribution of controlled substances. (Hr'g Ex. 1 at 2.) Agent Johannes also sets forth the facts that he learned while conducting his investigation. For example, he explained that he had obtained a search warrant (which is not at issue here) for a residence located in Savage, Minnesota. (*Id.*) Agent Johannes then explained that while executing the search of that residence, a black Toyota Camry arrived, and that a male ("D.K.G.") walked into the residence. (*Id.*) Agent Johannes states that Defendant initially remained inside the Toyota Camry, but was directed to exit the vehicle and remain in the residence for officer safety. (*Id.*)

Agent Johannes explained that due to the large amount of suspected narcotics found at the Savage, Minnesota residence during the search and the arrival of additional parties, a dog sniff of the Toyota Camry was conducted. (*Id.* at 3.) The affidavit stated that the dog sniff was conducted by Detective Irvin and his K9 partner, Jackson. (*Id.*) The affidavit noted that Jackson is certified to detect the odor of methamphetamine, ecstasy, cocaine, crack cocaine, marijuana, opium, and heroin, and that Detective Irvin and Jackson have been a certified K9 team since October 31, 2017. (*Id.*) The affidavit explains that Jackson alerted to the presence of a narcotic odor on the Toyota Camry, and that the vehicle was subsequently secured and towed to the Savage Police Department pending a search warrant. (*Id.*)

Here, the affidavit's description of the positive dog sniff and its representation that Detective Irvin and Jackson were certified was, on its own, sufficient to support probable cause for the search warrant at issue. *United States v. Sundby*, 186 F.3d 873, 875–76 (8th Cir. 1999) ("A dog's positive indication alone is enough to establish probable cause for

9

the presence of a controlled substance if the dog is reliable.") (citation omitted). To establish a dog's reliability, "the affidavit need only state the dog has been trained and certified to detect drugs," and the "affidavit need not give a detailed account of the dog's track record or education." *Sundby*, 186 F.3d at 876 (citation omitted). Thus, the search warrant based on the drug dog's alert is facially sufficient.[3]

Moreover, the totality of the circumstances supports the issuance of the search warrant for the Black Colored 2012 Toyota Camry. "Determining whether probable cause exists at the time of the search is a 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *Donnelly*, 475 F.3d at 954 (quoting *Gates*, 462 U.S. at 230). "Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* (citation omitted.) Here, the totality of the circumstances provided sufficient chance of finding evidence of a crime. *See Manning*, 361 F. Supp. 3d at 845 ("Probable cause exists even when there is less than a 50/50 chance of finding evidence of a crime.") (citation omitted). Defendant's arrival at the Savage, Minnesota residence where a large amount of narcotics were found, coupled with the positive dog sniff, established sufficient probable cause to support a search of the Toyota Camry, as well as to seize

---

[3] The Court notes that Defendant has not requested a *Franks* hearing in his suppression motion, and even if his motion could be construed to request one, he has not made the requisite showing. *See United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999) ("To warrant a hearing on the affidavit's veracity, the defendant must make 'a substantial showing that [it] contains intentional or reckless false statements and [that] the affidavit, [if] purged of its falsities, would not be sufficient to support a finding of probable cause.") (alterations in original) (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997)).

those items listed in the search warrant. This Court therefore recommends that Defendant's motion to suppress be denied.

### B. Good Faith

Even if probable cause did not exist, the search warrant at issue was still facially valid, and therefore the good-faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897 (1984), may apply. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted).

Here, Defendant does not allege, nor is there any evidence to suggest, that the officers' reliance on the search warrant at issue was not in good faith, nor is there evidence demonstrating that the officers' reliance on the warrant was unreasonable. Accordingly, this Court concludes that the good-faith exception would apply to the warrant, and the evidence seized as a result of its execution should not be suppressed. Therefore, Defendant's motion to suppress should be denied.

## RECOMMENDATION

Based on the file, record, and proceedings herein, and for the reasons stated above,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Amended Motion to Suppress Evidence Obtained as a Result of Search and Seizure-Multiple Warrants (**Doc. No. 40**) be **DENIED**.

Date:  October 21, 2020

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **November 4, 2020**. A party may respond to those objections by **November 18, 2020**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.